UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GUADALUPE ALCORTA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| JO ANNE B. BARNHART, | § | SA-02-CA-0472 OG (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   Hon. Orlando Garcia
      United States District Judge

I. Introduction

Plaintiff Guadalupe Alcorta seeks review and reversal of the administrative denial of her

application for Supplemental Security Income Benefits ("SSI") by the Administrative Law Judge

("ALJ") on February 20, 2004.[1]  Plaintiff contends that ALJ Jonathan P. Blucher's conclusion,

that plaintiff retained the residual functional capacity ("RFC") to perform work available in the

local and national economies, is not supported by substantial evidence of the record.  Plaintiff

requests that the Court reverse, remand and order the entry of a finding of disability, or, in the

alternative, remand the case for proper development.

---

[1] Docket Entries 1, 17, 21.  **See also** Transcript II at 10-22.  Two Administrative Transcripts have been filed in this case.  Following the practice of the parties, the Transcript dated October 9, 2002, will be referred to as Transcript I.  The Transcript dated March 3, 2006, will be referred to as Transcript II.

After considering plaintiff's brief in support of her complaint,[2] defendant's brief in support of the Commissioner's decision,[3] plaintiff's reply brief,[4] the transcripts of the Social Security Administration ("SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, it is my recommendation that plaintiff's request for relief be **GRANTED** such that the decision of the Commissioner be reversed and this action remanded for further proceedings consistent with this recommendation.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. Jurisdiction

The District Court has jurisdiction to review the final decision of the Commissioner of Social Security as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. Administrative Proceedings

Based on the record in this case, plaintiff fully exhausted her administrative remedies prior to filing this action in federal court.  Plaintiff filed for SSI benefits on January 21, 1997,

---

[2] Docket Entry 17.

[3] Docket Entry 20.

[4] Docket Entry 21.

alleging disability beginning June 1, 1989.[5]  The Commissioner initially denied the application

on March 12, 1997,[6] and denied her request for reconsideration on August 8, 1997.[7]  Plaintiff did

not appeal the administrative denial of benefits.[8]

On January 27, 1999, plaintiff protectively filed a second application alleging disability

beginning on October 16, 1998.[9]  The Commissioner initially denied the second application on

June 23, 1999,[10] and denied her request for reconsideration on December 18, 1999.[11]

Plaintiff requested a hearing before an ALJ,[12] and ALJ Blucher held an initial hearing on

January 11, 2001, in San Antonio, Texas.[13]  Suzanne Villalon-Francisco represented plaintiff at

the hearing.[14]  At the administrative hearing, ALJ Blucher heard testimony from plaintiff and

vocational expert ("VE") Judith Harper.[15]

On June 27, 2001, ALJ Blucher issued his decision in which he concluded that plaintiff

was not under a "disability," as defined by the Social Security Act ("the Act"), at any time

---

[5] Transcript II at 75-77.

[6] Transcript II at 24, 40-45.

[7] Transcript II at 25, 49-51.

[8] Transcript I at 14; Docket Entry 17 at 2.

[9] Transcript I at 91-92.

[10] Transcript I at 64, 66-71.

[11] Transcript I at 65, 74-76.

[12] Transcript I at 77.

[13] Transcript I at 79, 22-63.

[14] Transcript I at 24.

[15] Transcript I at 48-59.

through the date of the decision.[16]  Specifically, ALJ Blucher found that although plaintiff's

impairments did not allow her to perform her past relevant work, she retained the RFC to

perform medium work that existed in significant numbers in the national economy.[17]

After receiving the ALJ's unfavorable decision, plaintiff requested review of the hearing

decision.[18]  On March 29, 2002, the Appeals Council concluded that there was no reason under

its rules to review the ALJ's decision, and denied plaintiff's request for review.[19]

Plaintiff commenced the instant action in this Court on May 15, 2002.[20]  Defendant

subsequently filed an unopposed motion to remand the case to the SSA because the claim file

and the recording of the ALJ's administrative hearing could not be located.  Upon remand, the

SSA would return the case to the ALJ for a *de novo* hearing.  The District Court entered an Order

on July 25, 2002, granting defendant's motion and remanding the case to the SSA for further

proceedings.[21]  The Appeals Council subsequently vacated the final decision of the

Commissioner and remanded the case to the ALJ for further proceedings.[22]

While awaiting a final decision on her prior application, plaintiff protectively filed a new

claim for SSI benefits on January 14, 2002, alleging disability beginning May 15, 1999.

Plaintiff's new application was "escalated to the hearing level," and on May 2, 2003, ALJ

---

[16] Transcript I at 14-20.

[17] Transcript I at 19-20, ¶¶ 5, 6, and 10.

[18] Transcript I at 10.

[19] Transcript I at 6-7.

[20] Docket Entry 1.

[21] Docket Entry 6.

[22] Transcript II at 60-61.

4

Blucher conducted a second administrative hearing concerning both applications.[23]  Chester

Brown represented plaintiff who testified with the assistance of Hilda Garcia, a Spanish language

interpreter.  The ALJ also heard testimony from VE Don Marth.[24]

Plaintiff, born August 9, 1952, was forty-six (46) years of age when she filed her second

application, forty-eight (48) years of age at the January 2001 hearing,[25] and fifty (50) years of age

at the May 2003 hearing.[26]  Over the course of the hearings, plaintiff testified that she was a

United States citizen, born in Saginaw, Michigan.[27]  Plaintiff explained that she was married, but

at the time of the second hearing she was separated from her husband who physically abused

her.[28]  Plaintiff lived with her aunt in a house that her aunt rented.[29]  She did not care for her aunt,

but did help around the house when she was well enough to do housework.[30]

When asked about her education level, plaintiff testified that she only went to the second

grade and had no other education or job training.[31]  Plaintiff began working in the fields as a

---

[23] Transcript II at 13, 68, and 554.

[24] Transcript II at 556.

[25] Transcript I at 91-92 and 26 respectively.

[26] Transcript II at 558.

[27] Transcript II at 558.

[28] Transcript II at 559, 563.

[29] Transcript II at 559-560.  At the first hearing, plaintiff, who testified without the assistance of an
interpreter stated that her aunt was eighty-one (81) years old.  Transcript I at 28.  At the second hearing, she stated
that her aunt was sixty-five (65) years old.  Transcript II at 559.

[30] Transcript I at 28.

[31] Transcript I at 28; Transcript II at 558.

migrant farm worker when she was six or seven years old.[32]  Plaintiff explained that "they" would always pull her out of school to work, so she was not able to attend school further than the second grade.[33]  Plaintiff testified that she cannot read or write Spanish or English, but she can speak Spanish and some English.[34]

Plaintiff worked as a migrant farm worker from 1959 to 1994.[35]  She testified that she hoed weeds out of cotton fields, and also worked with strawberries, tomatoes, and cherries.[36]  Later, plaintiff worked at a nursing home for two weeks, and a then as a housekeeper at various hotels.[37]  Plaintiff also worked making tortillas and as a dishwasher.[38]

When asked about her impairments, plaintiff complained that her asthma prevents her from working.  The chemicals in the cleaners that she used in her housekeeping duties triggered asthma attacks.[39]  Other common chemicals, such as those used in hair spray and perfume, and certain weather conditions aggravated her asthma.[40]  The flour used in the tortillas also triggered attacks.[41]  Plaintiff explained that when she has an asthma attack, she cannot breathe and her

---

[32] Transcript I at 27.

[33] Transcript II at 558.

[34] Transcript II at 558, 562.

[35] Transcript I at 30.

[36] Transcript I at 50.

[37] Transcript I at 34-36; Transcript II at 561.

[38] Transcript I at 40.

[39] Transcript I at 37-38; Transcript II at 563.

[40] Transcript II at 566-567.

[41] Transcript I at 40.

head hurt a lot.[42]

Plaintiff testified that she frequently had bouts of bronchitis followed by asthma attacks. She used inhalers four times per day to relieve her symptoms. She also used a "machine" three times per day to treat herself.[43] Plaintiff stated that she had to do the treatments everyday.[44] She takes aspirin for relief from headaches and often gets nausea and vomits when experiencing headaches.[45]

Further, plaintiff testified that she suffered from depression that began when she lost custody of her children.[46] She took Zoloft to control the depression and allow her to interact with people.[47] Plaintiff also complained that she experienced pain from her shoulder and numbness in her right hand.[48] Plaintiff had surgery on her shoulder to correct nerve impingement, but even after the surgery she was unable to move her shoulder through a full range of motion.[49] Plaintiff testified that she experienced discomfort in her left leg, including pain and numbness, that limited her ability to stand for periods longer than one hour.[50]

Plaintiff described her daily activities as watching television and doing some household

---

[42] Transcript II at 567.

[43] Transcript II at 565-566.  Plaintiff uses a nebulizer at home to administer Abuterol treatments. **See** Transcript II at 289.

[44] Transcript II at 567.

[45] Transcript II at 567.

[46] Transcript I at 38.

[47] Transcript II at 568.

[48] Transcript II at 568.

[49] Transcript I at 39.

[50] Transcript II at 569-570.

chores.  Sometimes she helped her aunt.  When she did not feel sick, she would try to cook or sweep a little.  She washed her own clothes.[51]  Plaintiff did not go to movies or restaurants, but she attended church.[52]  Plaintiff testified that she had a driver license, but did not drive.  She relied upon her sister for transportation.[53]

VE Marth testified at the May 2003 hearing.  He identified plaintiff's past relevant work as a housekeeper and explained that housekeeping is typically considered to be at a light physical level and of unskilled nature.[54]

ALJ Blucher propounded a hypothetical describing an individual of plaintiff's age, education, and work experience, capable of performing light or medium jobs.  The ALJ described an individual who could speak Spanish, but was illiterate in English and Spanish.  The ALJ included limitations of no substantial amounts of fumes, dust, gases, odors, and things of that nature.  He further limited the hypothetical individual to jobs requiring the concentration of an average person who needs precautions against headaches, heights, hazardous machinery, and things of that nature.[55]  ALJ Blucher asked the VE if light or medium jobs existed in significant numbers in the national economy that such a hypothetical individual could perform.[56]

VE Marth testified that the hypothetical individual could perform unskilled, medium

---

[51] Transcript II at 562.

[52] **Id.**

[53] Transcript II at 560.

[54] Transcript II at 572.

[55] Transcript II at 574.

[56] **Id.**

exertional level jobs of a marker in a laundry, a general helper in food preparation, and a hand packer or grocery bagger.[57]  VE Marth further opined that plaintiff could perform the unskilled, light exertional level jobs of Mexican food worker, fast food worker, and folder in a laundry.[58]

On February 20, 2004, ALJ Blucher issued his decision in which he concluded that based on the applications filed on January 27, 1999, and January 14, 2002,  plaintiff was not eligible for SSI payments under Sections 1602 and 1614(a)(3)(A) of the Social Security Act ("the Act").[59] After receiving notice of the ALJ's unfavorable decision, plaintiff requested review of the hearing and decision.[60]  On October 13, 2005, the Appeals Council notified plaintiff's counsel that it had considered the reasons that counsel disagreed with the ALJ's decision, and found no reason to exercise jurisdiction.  In particular, the Appeals Council concluded plaintiff's respiratory impairment did not meet or equal in severity any impairment listed in Appendix 1, Subpart P, Regulations No. 4.  The Appeals Council found that the ALJ's decision was supported by substantial evidence, and therefore, constituted the final decision of the Commissioner.[61]

On November 17, 2005, defendant filed a motion to reinstate the case and an answer to plaintiff's original complaint.[62]  The District Court granted defendant's motion to reinstate by Order entered on November 22, 2005.

---

[57] **Id.**

[58] Transcript II at 574.

[59] Transcript II at 13-22.

[60] Transcript II at 10 and 9, respectively.

[61] Transcript II at 5.

[62] Docket Entries 7 and 8.

## IV.  Issue Presented

Is the ALJ's decision that plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, supported by substantial evidence and does the decision comport with relevant legal standards?

## V.  Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[63]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[64]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[65]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[66]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its

---

[63] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[64] **Villa v. Sullivan**, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

[65] **Abshire v. Bowen,** 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[66] **Martinez**, 64 F.3d at 173.

judgment for that of the Commissioner.[67]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[68]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[69]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability is eligible to receive SSI benefits.[70]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[71]  A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant

---

[67] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **see also Villa**, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[68] **Martinez**, 64 F.3d at 174.

[69] **Id.**

[70] 42 U.S.C. § 1382(a)(1) & (2).

[71] 42 U.S.C. § 1382c(a)(3)(A).

lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.[72]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[73]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[74]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[75]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[76]  The second step involves determining whether the claimant's impairment is severe.[77]  If it is not severe, the claimant is deemed not disabled.[78]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[79]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[80]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC

---

[72] 42 U.S.C. § 1382c(a)(3)(B).

[73] 20 C.F.R. §§ 404.1520 and 416.920.

[74] **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995).

[75] 20 C.F.R. §§ 404.1520 and 416.920.

[76] **Id.**

[77] **Id.**

[78] **Id.**

[79] **Id.**

[80] **Id.**

and the demands of his or her past work.[81]  If the claimant is still able to do his or her past work, the claimant is not disabled.[82]  If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[83]  If the claimant cannot do other work, he or she will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[84]  Once the claimant has shown that he or she is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[85]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he or she is unable to perform the alternative work.[86]

**B. Findings and Conclusions of the ALJ**

In the instant case, ALJ Blucher reached his decision at step five of the evaluation process.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability.[87]  The ALJ then concluded at steps two and three

---

[81] **Id.**

[82] **Id.**

[83] **Id.**

[84] **Leggett**, 67 F.3d at 564.

[85] **Watson  v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

[86] **Anderson v. Sullivan**, 887 F.2d 630, 632-33 (5th Cir. 1989).

[87] Transcript II at 14, ¶ 1 at 21.

that plaintiff had an impairment or combination of impairments (asthma and right shoulder impingement syndrome status post subacromial decompression with distal clavicle resection) which were severe,[88] but did not meet or medically equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4.[89]   At step four, the ALJ found that plaintiff could not perform her past relevant work based on her residual functional capacity.[90]   In determining, plaintiff's exertional and nonexertional limitations, ALJ Blucher noted that plaintiff claimed disability secondary to hypertension, alleged frequent headaches, and had been diagnosed with gastroesophageal reflux disease, but described each of these conditions as controlled through medication.[91]   He also noted that plaintiff alleged disability due to memory loss and depression. The ALJ determined that plaintiff's depression was mild and controlled by medication.[92]   Finally, the ALJ noted plaintiff's bronchitis and asthma.[93]   At step 5, the ALJ held that given plaintiff's age, education, past work experience, and residual functional capacity to do a limited range of medium work, plaintiff could perform work as a laundry marker, a general helper/food preparer, a hand packager, and a grocery bagger.   At the light exertional level, the ALJ found that plaintiff could perform work as a Mexican food preparation worker, a fast food worker, a laundry folder, an assembler of small parts, and a retail marker.[94]   Based on the foregoing, ALJ Blucher

---

[88] Transcript II at 14, ¶ 2 at 21.

[89] Transcript II at 14, ¶ 3 at 21; **see also** 20 C.F.R. Pt. 404, Subpt. P, App. 1 (containing the list of impairments).

[90]  Transcript at II 20, ¶ 6 at 21.

[91] Transcript II at 15.

[92] Transcript II at 16.

[93] Transcript II at 16-19.

[94] Transcript II at 20-21, ¶ 11 at 22.

concluded that plaintiff was not under a disability through date of the decision.[95]

**C. Plaintiff's Allegations of Error**

Plaintiff claims that the ALJ erred in determining that plaintiff was not under a disability as defined by the Act through the date of the decision and therefore, not eligible for SSI benefits. In particular, plaintiff contends that the ALJ erred by (1) finding that plaintiff's asthma did not meet a listed impairment; (2) finding that plaintiff's mental impairment is not severe; and (3) misapplying 20 C.F.R. § 930 in finding that plaintiff failed to comply with prescribed treatment.

**1. Is the ALJ's finding that plaintiff's asthma did not meet a listed impairment supported by substantial evidence?**

Plaintiff maintains that her asthma attacks meet the severity of Listing 3.03B, thereby qualifying her as disabled at Step 3 of the disability analysis.  Plaintiff argues that the ALJ misconstrued the requirements of the listing with respect to the medical setting element and the duration element of the asthma attack.  She contends that the ALJ erroneously interpreted the regulation to require that the individual receive treatment in a hospital or emergency setting and that the treatment last at least one day, and consequently, found that plaintiff had only suffered one qualifying asthma attack.  Plaintiff argues that the proper interpretation of the regulations is that the asthma attack last one day and require intensive treatment, not necessarily in a hospital setting.

Appendix 1, Subpart P, Part 404 of the Regulations contains a list of impairments and their indicators of medical severity that are considered so debilitating as to preclude substantial

---

[95] Transcript at 21, ¶ 12 at 22.

gainful activity.[96]  In the vernacular of disability law, Appendix 1 is known as the Listings.[97]

"The Listings are designed to streamline the benefit determination analysis by identifying those

'impairments that would prevent an adult, regardless of [her] age, education, or work experience,

from performing any gainful activity, not just 'substantial gainful activity.'" [98]  For an impairment

to meet or medically equal a Listing, the impairment must satisfy each and every one of the

criteria set forth in the Regulations for that Listing.[99]

      The burden of proof is on the plaintiff to "provide and identify medical signs and

laboratory findings" that demonstrate that his or her impairment is equivalent to a Listing.[100]  If

the plaintiff fails to carry his burden, the Court must find the ALJ's determination, that the

impairment does not equal a Listing, is supported by substantial evidence.[101]

      Section 3.00 of the Listings sets out respiratory impairments.  Respiratory impairments

include a listing for asthma which requires continuing symptoms despite a regimen of prescribed

treatment.  Asthma can be associated with exacerbations or attacks of such frequency and

intensity as to be disabling even during periods of relative clinical stability.[102]  For asthma

exacerbations to be considered disabling, Listing 3.03B requires:

---

[96] **Washington v. Barnhart**, 413 F.Supp.2d 784, 793 (E.D.Tex. 2006)

[97] **Id.**

[98] **Caviness v. Apfel**, 4 F.Supp.2d 813, 818 (S.D.Ind. 1998) (quoting **Sullivan v. Zebley**, 493 U.S. 521, 532 (1990)).

[99] **Selders v. Sullivan**, 914 F.2d 614, 619 (5th Cir. 1990) (citing **Sullivan v. Zebley**, 493 U.S. 521 (1990) and 20 C.F.R. § 404.1526(a)).

[100] **Washington**, 413 F.Supp.2d at 793 (citing **McCuller v. Barnard**, 72 Fed.Appx. 155, 158 (5th Cir.2003), **Selders v. Sullivan**, 914 F.2d 614, 619 (5th Cir.1990), and 20 C.F.R. § 404.1526(a) (2005)).

[101] **Id.** (citing **Selders v. Sullivan**, 914 F.2d at 620).

[102] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00.

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physical intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

Listing 3.00C defines attacks as

> prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.

Listing 3.00C also defines hospital admissions as "inpatient hospitalizations for longer than 24 hours."

Plaintiff relies heavily on **Riley v. Barnhart**,[103] for its interpretation of the Listing requirements.  In that case, the plaintiff, a forty-two year old woman diagnosed with asthma, appealed the Commissioner's determination that she was not disabled.  The plaintiff was prescribed various medications, and continued to seek additional treatment from her physician approximately once every four months.[104]  The plaintiff's condition worsened, and she was admitted into a hospital on three occasions.  Plaintiff was also treated with Solu-Medrol and Depo-Medrol (anti-inflammatory corticosteroids) on numerous occasions.[105]

The District Court in **Riley** explained that Listing 3.03B contained four elements: (1) six "attacks," (2) occurring in a twelve-month period, (3) with each "attack" lasting one or more

---

[103] **Riley v. Barnhart**, No. Civ. A 03-0288, 2004 WL 2423840 (E.D. La. October 28, 2004).

[104] **Id.** at *1.

[105] **Id.**

days, (4) and requiring intensive treatment.[106]  The District Court did not expressly define

"intensive treatment," but noted that the listing provided an *illustrative* list of "intensive

treatments" including intravenous bronchodilator or antibiotic administration in a hospital,

emergency room, or equivalent setting.  Based on the express language of the listing, the District

Court concluded that admittance at a hospital is not necessary for a treatment to be considered

intensive.[107]

   Defendant does not directly address plaintiff's contention that __Riley__ provides an accurate

analysis of the asthma listing, but rather, cites directly to the Listings in support of her argument

that plaintiff did not carry her burden to show that her attacks did not met the Listing

requirements.  Defendant argues that since plaintiff did not meet her burden, the ALJ's

determination that she did not meet Listing 3.03B is supported by substantial evidence.

   In his decision, ALJ Blucher acknowledged plaintiff's long history of asthma.  He

discussed the notes of Dr. Darla H. Bejnar, plaintiff's primary treating physician for her asthma,

concerning plaintiff's treatment.  ALJ Blucher noted that plaintiff received medical attention for

her asthma documented by physician notes dated June 4, 1999, through August 27, 2002.  For

example, Dr. Bejnar's notes show that she saw plaintiff on June 4, 1999, and determined that

plaintiff was suffering from astma with acute exacerbation.  Dr. Bejnar administered 125 mg IM

of Solu-Medrol.[108]  Plaintiff subsequently was admitted to Southwest General Hospital on June 5,

1999, and discharged on June 9, 1999.  At the hospital, plaintiff was diagnosed with bronchial

asthma, atypical chest pain, and mild anemia.  She was placed on oxygen and given nebulizar

---

[106] __Id.__ at *4.

[107] __Id.__

[108] Transcript II at 16, 336.

treatments.[109]  The ALJ noted that on July 29, 1999, plaintiff reported that she was doing better since her hospitalization.[110]  However, on December 7, 1999, plaintiff sought treatment from Dr. Bejnar for an asthma flare up with coughing and chest tightness for two days.  The doctor's notes show that plaintiff was treated with Prednisone and given refills for her Albuterol inhaler and nebulizer.[111]  On January 21, 2000, plaintiff received treatment for acute bronchitis with asthma exacerbation.  Plaintiff received the antibiotic Augmentin along with Prednisone.  The doctor's notes show that plaintiff had asthma, cough, and chest congestion for two days.

The ALJ noted that plaintiff visited the doctor on March 20, May 15, and October 10, 2000.  According to the ALJ, at the March and May doctor visits, plaintiff was breathing well and not in distress.  At the October visit, she had decreased breath sounds throughout her lungs, which the ALJ attributed to plaintiff running out of asthma medication.  Plaintiff received treatment at the doctor's office and was sent home with a prescription for a tapering course of Prednisone.[112]  ALJ Blucher did not address Dr. Wood's notes from April 19, 2000, describing plaintiff's visit the previous day for asthma exacerbation.  Plaintiff was treated with Albuterol nebulizer, Prednisone, and Solu-Medrol.[113]

ALJ Blucher briefly described plaintiff's visits to the doctor on October 30, November 19, December 11, and December 13, 2001.  He also noted visits on January 15, 2002, March 28, July 17, and August 27, 2002.  ALJ Blucher concluded his analysis of the severity of plaintiff's

---

[109] Transcript I at 281.

[110]  Transcript II at 16.

[111] Transcript I at 322.

[112] Transcript II at 17.

[113] Transcript I at 306.

asthma by stating:

> Contrary to the contentions of the claimant's counsel at the initial hearing on this application (see Ex. 4A, p. 61), the claimant does not meet Listing 3.03B. The episodes that the claimant relies on are insufficient to be 3.03B attacks. A 3.03B asthma attack, by definition, must meet the conditions noted at 3.00C. Such an attack would require treatment at a hospital emergency room or equivalent setting, and last at least 24 hours, which happened only once. Normally, the claimant would go to her doctor, receive some treatment, and then leave. Furthermore, it appears that several such episodes (if not most) were precipitated by the claimant's failure to comply with her prescribed medication therapy. Thus, the criteria of section 3.03B are not satisfied.[114]

While the ALJ noted several of plaintiff's asthma exacerbations, his analysis fails to properly consider plaintiff's evidence in light of the correct legal standard. First, it is unclear from the decision whether the ALJ considered the length of each asthma episode or the length of the time that plaintiff received treatment in the doctor's office in determining whether plaintiff's asthma exacerbation met the durational length required by the listing. Second, the ALJ failed to discuss whether the treatment that plaintiff received, whether it was antibiotic treatment, corticosteriod treatment, or other medication, qualified as "intensive treatment" pursuant to the listing. Third, the ALJ failed to explain whether plaintiff received "intensive treatment" from her physician or through her own efforts in a setting equivalent to a hospital or emergency room.[115]

Accordingly, the ALJ failed to properly apply the correct legal standard in analyzing whether plaintiff's asthma met a Listing requirement. The ALJ failed to fully develop the record and fully explain his determination that plaintiff's asthma impairment did not meet or equal

---

[114] Transcript II at 18.

[115] See e.g. **Martinez Nater v. Secretary of Health and Human Services**, 933 F.2d 76, 78-79 (1st Cir. 1991) (holding that a claimant may receive intensive treatment in a doctor's office); **see also Riley**, 2004 WL 2423840 at * 5-6 (holding that the ALJ should fully develop the record to determine whether an episode required intensive treatment in a hospital, emergency room, or equivalent setting).

Listing 3.03B.  Therefore, the ALJ's decision is not based on substantial evidence.  Accordingly, plaintiff's request for relief should be granted.

**2. Did the ALJ err in finding that plaintiff's mental impairment was not severe?**

Plaintiff contends that ALJ Blucher erred in determining that plaintiff's mental impairment was not severe, and thereby failed to properly assess her residual functional capacity. In particular, plaintiff argues that the ALJ failed to address Dr. Lewis H. Richmond's consultative examination in his February 2004 decision and therefore, the ALJ's determination that plaintiff's depression was not severe was not supported by substantial evidence.

It is well-settled that the ALJ must evaluate every medical opinion received,[116] and may not pick and choose from the record only the evidence which supports his or her position,[117] nor reject a medical opinion without giving an explanation for doing so.[118]  In evaluating medical evidence, the ALJ must look at the claimant's relationship to the physician, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the relevant evidence used by the physician to support his or her opinion, the consistency between the opinion and the record as a whole, and area of specialization of the physician providing the opinion.[119]

In this case, the SSA required plaintiff to submit to a consultative psychiatric examination to be performed by Dr. Richmond.  Dr. Richmond performed the examination on May 18,

---

[116] 20 C.F.R. §§ 404.1527(d), 416.927(d).

[117] **Loza v. Apfel**, 219 F.3d 378, 394 (5th Cir. 2000).

[118] **Id.** at 395.

[119] 20 C.F.R. §§ 404.1527(d), 416.927(d).

1999.[120]  At the examination, he observed plaintiff's affect to be constricted and her dominant

mood was of depression manifested by sad facies and frequent tearfulness.[121]  Dr. Richmond

diagnosed plaintiff as having a Dysthymic Disorder at times approaching Major Depressive

Disorder proportions.  He suspected that plaintiff had learning disorders of reading and

mathematics and borderline mental functioning.  He assessed an Axis V diagnosis of 50.[122]

ALJ Blucher did not discuss or even mention Dr. Richmond's consultive evaluation in his

February 2004 decision.  The ALJ failed to comply with the Regulations which require him to

evaluate Dr. Richmond's opinion concerning plaintiff's depression and provide reasons if he

chose to reject the opinion.  As Dr. Richmond's opinion expressly addressed the severity of

plaintiff's depression, the ALJ's decision that plaintiff's depression was not severe, was not

based on the substantial evidence of the record.  Therefore, plaintiff motion for relief should be

granted.

Defendant argues that ALJ Blucher adequately discussed and discounted Dr. Richmond's

diagnosis in his January 2001 decision, and there is no reason to believe that ALJ Blucher would

treat Dr. Richmond's diagnosis differently had he addressed it in the later decision.  Defendant's

argument is without merit.

The Appeals Council vacated the January 2001 decision and required further

development of the record and the issuance of a new decision.[123]  The ALJ complied with the

Appeals Council Order by holding a new hearing, accepting further medical evidence, and

[120] Transcript I at 195.

[121] Transcript I at 196.

[122] Transcript I at 197-198.

[123] Transcript II at 60-61.

issuing a new decision.  The February 2004 decision became the final decision of the

Commissioner when the Appeals Council denied plaintiff's request for reconsideration on

October 13, 2005.[124]  The law in the Fifth Circuit is clear that the ALJ's decision "must stand or

fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."[125]

Accordingly, the ALJ's prior analysis cannot be injected into his subsequent opinion.

### 3. Did the ALJ misapply 20 C.F.R. § 930 in finding that plaintiff failed to comply with prescribed treatment?

Plaintiff argues that the ALJ misapplied 20 C.F.R. § 930 in finding that plaintiff failed to

comply with her prescribed treatment.  Specifically, plaintiff argues that the ALJ should have

first concluded that plaintiff was disabled before considering whether plaintiff would have been

disabled if she followed her prescribed treatment.  Further, the ALJ failed to consider whether

there was justifiable cause for plaintiff failing to comply with her prescribed treatment.

In order to receive benefits, 20 C.F.R. § 416.930 requires that a claimant follow treatment

prescribed by a physician that could restore the claimant's ability to work.  If the claimant fails to

follow the prescribed treatment without a good reason, the claimant will not be considered

disabled.[126]  The Regulations provide that the claimant's physical, mental, educational, and

linguistic limitations will be considered in determining whether plaintiff has an acceptable reason

for failing to comply with prescribed treatment.[127] Furthermore, if a "claimant cannot afford the

prescribed treatment and can find no way to obtain it, the condition that is disabling in fact

---

[124] Transcript II at 5-6.

[125] **Newton v. Apfel**, 209 F.3d 448, 455 (5th Cir. 2000).

[126] 20 C.F.R. § 416.930(b).

[127] 20 C.F.R. § 416.930(c).

continues to be disabling in law."[128]

Social Security Ruling 82-59 provides in relevant part that the SSA may determine that an individual has failed to follow prescribed treatment only when (1) the individual's impairment precludes engaging in substantial gainful activity, (2) the impairment lasted or is expected to last for twelve or more months or result in death, (3) the treatment is expected to restore the individual's ability engage in substantial gainful activity, and (4) the evidence shows that the individual refused to follow the prescribed treatment.[129]  SSR 82-50 requires the claimant be given an opportunity to give specific reasons for not following the prescribed treatment.  Further, detailed questioning may be needed to identify and clarify the essential factors of refusal.  The record must reflect the claimant's reasons for not following the treatment.[130]

In this case, the ALJ did not expressly find as a preliminary matter that plaintiff was disabled, and then determine that by following her prescribed regimen of treatment plaintiff would be able to engage in substantial gainful activity.  However, the ALJ did find that

> the record clearly indicates that the claimant has difficulty with asthma but that some of this difficulty has been occasioned by her failure to comply with prescribed medical therapy and a tendency to seek out work environments where she will be exposed to environmental irritants that precipitate her asthma.  The evidence shows that absent noncompliance with prescribed treatment, her depression and hypertension are controlled with medication therapy.[131]

While the ALJ considered plaintiff's noncompliance with prescribed medical therapy in

---

[128] **Taylor v. Bowen**, 782 F.2d 1294, 1298 (5th Cir. 1986).

[129] SSR 82-50, 1982 WL 31384, * 1.

[130] **Id.** at *2.

[131] Transcript II at 19.  It should be noted that there is no evidence that plaintiff "seeks out work in environments where she will be exposed to environmental irritants that precipitate her asthma."

his determination of the severity of plaintiff's impairments, he failed to provide plaintiff with a full opportunity to clearly and accurately explain why she failed to comply with said therapy. The record is devoid of any questioning by the ALJ of plaintiff concerning her reasons for failing to comply with treatment, and is devoid of any urging by the ALJ to express in her own words her reasons for not complying with treatment.  The ALJ only asked plaintiff where she got money for her medications, and was informed that Dr. Bejnar sent her to the drugstore where she gets the medicine.[132]

To the extent that the ALJ relied upon plaintiff's noncompliance with her prescribed medical treatment to determine that plaintiff was not disabled and to determine her residual functional capacity, the ALJ committed error by failing to properly develop the record concerning plaintiff's reasons for noncompliance as set forth in SSR 82-50.  Accordingly, plaintiff's request for relief should be granted.

**4. Plaintiff's request that the Court order the Commissioner to assign the hearing to another ALJ.**

In her prayer for relief, plaintiff asks that the Court on remand order the Commissioner to assign her case to another ALJ to fairly and properly evaluate the evidence of the record. Defendant takes plaintiff's request as an allegation of bias on the part of ALJ Blucher and vigorously defends against an allegation of bias.

The Regulations provide a method for a party to object to the assignment of an ALJ.[133] The party must bring his or her objection to the ALJ at the earliest opportunity.  The ALJ must consider the request and decide whether to disqualify him or herself.  If the ALJ does not

---

[132] Transcript I at 47-48.

[133] 20 C.F.R. § 416.1440.

withdraw, after the hearing, the party may present his or her objections to the Appeals Council and request a revision of the hearing decision or a new hearing.[134]

In this case, plaintiff has not expressly stated that she believes that ALJ Blucher is biased against her.  In fact, plaintiff has not given a reason for her request that a different ALJ to be assigned to the case, and has not provided authority for her request.  Further, neither party has provided any evidence that the Commission will necessarily appoint ALJ Blucher to hear the remand of the case.  Based on the current record in the case, 20 C.F.R. § 416.1440 provides the appropriate method for plaintiff to request the appointment of a different ALJ to her case.  Accordingly, plaintiff's request that the Court order the Commissioner to appoint an ALJ other than ALJ Blucher to her case should be denied.

### 5. Plaintiff's evidence of a grant of benefits based on a subsequent application.

Along with her brief, plaintiff submitted a copy of a determination of benefits that she received based on a subsequent application for SSI.  Defendant objected to the exhibit and argued that the Court should not consider the benefit award in determining the merits of plaintiff's case.  However, defendant did not file a motion to strike the exhibit.

Plaintiff did not refer to the exhibit in its brief.  Regardless, a determination that plaintiff qualified for SSI benefits at a later date based on a subsequent application has no bearing on the instant case.  Therefore, the benefit award was not considered in formulating this Memorandum and Recommendation.

### VI.  <u>Recommendation</u>

Based on the foregoing, I recommend that plaintiff's request for relief (Docket Entry 1)

---

[134] **<u>Id.</u>**

be **GRANTED**, the decision of the Commissioner **REVERSED**, and this action **REMANDED** for further proceedings consistent with this Memorandum and Recommendation.   I further recommend that plaintiff's request, that the Commissioner be ordered to appoint a different ALJ to hear the case on remand, be **DENIED**.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[135]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[136]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved

---

[135] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[136] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the District Court.[137]

      **SIGNED** on December 28, 2006.


                    *Nancy Stein Nowak*

                    NANCY STEIN NOWAK
                    UNITED STATES MAGISTRATE JUDGE

---

[137] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).